# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**J&J SPORTS PRODUCTIONS, INC.,**

    **Plaintiff,**

  v.              Case No. 13-CV-506

**HOMESTYLE RESTAURANT GROUP LLC, et al.,**

    **Defendant.**

## DECISION AND ORDER FOLLOWING COURT TRIAL

**FINDINGS OF FACT AND PROCEDURAL HISTORY**

On May 7, 2011, WBO welterweight champion Manny Pacquiao met Shane Mosley in the ring of Las Vegas' MGM Grand. Hussein Govani ordered the fight on pay-per-view to watch at home with friends. Unfortunately for Mr. Govani, his plans at home were interrupted and changed. Mr. Govani's daughter, Yomira Govani-Wilbur, was running a new promotion at a night club owned by Mr. Govani and managed by his daughter. This promotion was coordinated with a local magazine and involved the use of female models in the club to promote the club and the magazine. Even though it was advertised on social media, by most measures it was a flop in that it failed to draw much of a crowd to the club. That night, perhaps only 20 people, many of whom were employees of the club or involved in the promotion, were ever in the club at any one time.

However, Ms. Govani-Wilbur did not know how the promotion would turn out when she called her father that evening and said she was short of staff. The club had problems in the past,

including fights and shootings, so Mr. Govani wanted to be there in case the promotion succeeded in drawing a crowd. But he also did not want to miss the fight that he ordered. So he packed up his cable box and went to the club. He connected the box to a television in the club's VIP area, a space up a number of stairs above the main area of the club, and he was joined by two friends. This VIP room and its television is visible to the much of the lower area of the club. Moreover, the club's televisions are linked together so that what is shown on the one television in the VIP room can be simultaneously shown on the club's four other televisions that are on the main floor. Although these main floor televisions are usually turned off unless the club's DJ is using them to show music videos, at one point in the evening Mr. Govani did go downstairs and noticed some of the club's staff watching the fight on a television located in the bar area. He told them that they should be working instead of watching the fight, and he turned off the television. The sound was not on because a DJ was playing music.

One of the few patrons in the club that evening was Michael Pfeifer, an investigator tasked with identifying commercial establishments showing pay-per-view fights without paying the commercial rate. On the night of a pay-per-view fight he might visit many different establishments during the three to four hours of an average broadcast. Since he began doing this investigative work in 2009, he visited over 200 locations, roughly 65 of which were found to be unlawfully displaying the pay-per-view fight. He stopped by the club about 9:45 PM when the undercard (not the main event) was being broadcast, paid the $5 cover charge at the door, ordered a beer, and observed the fight on the club's five televisions. He observed a few patrons (6-7), some of whom would occasionally dance to the music, and about 10-11 staff. He was there for less than half an hour. He made a few notes once he returned to his car, and then a day or two later he recorded his observations in an affidavit.

The plaintiff, J&J Sports Productions, Inc., was granted the right to distribute the broadcast of the main event fight and the undercard bouts. (Docket No. 14, ¶ 10.) The cost for a commercial establishment to show a broadcast of the fight was a minimum of $2,200 and might be up to $20,200 depending upon the size and nature of the establishment. (Ex. 3.)

The plaintiff filed suit in this court on May 6, 2013 alleging that the club, Homestyle Restaurant Group, LLC, doing business as Club International, and Mr. Govani individually, violated federal law by failing to pay the commercial rate and obtain the appropriate license to display the fight at the club. Following all parties consenting to the full jurisdiction of a magistrate judge, the matter was tried to the court on April 18, 2014. The parties submitted post-hearing briefs, (Docket Nos. 19, 20, 22), and the matter is now ready for resolution.

**CONCLUSION OF LAW**

Based upon the evidence adduced at that hearing, as summarized above, the court makes the following conclusions of law. Although the complaint alleged violations of both 47 U.S.C. § 605 and 47 U.S.C. § 553, the parties stipulated at trial that only § 553 was relevant. As the parties stated in their joint pretrial report, "the only issues for the Court to decide are damages, costs, and attorney's fees." (Docket No. 17 at 2.) Thus, the court finds that Mr. Govani and Homestyle Restaurant Group, LLC violated 47 U.S.C. § 553(a)(1), which states in relevant part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law," when Mr. Govani displayed the pay-per-view event at the club without obtaining the necessary authorization to do so by paying the commercial rate.

The plaintiff is not claiming actual damages, but it is entitled to statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii). The court determines that the plaintiff is not entitled to additional damages under 47 U.S.C. § 553(c)(3)(B). For the reasons set forth below, the court assesses statutory damages at $4,200.

The court also finds that the plaintiff is entitled to its attorney's fees under 47 U.S.C. § 553(c)(2)(C) in the amount of $1,500 and costs under Fed. R. Civ. P. 54(d)(1). Costs shall be sought and awarded in accordance with Civil L.R. 54.

**ANALYSIS**

Counsel for the plaintiff stated at trial that the plaintiff is not seeking actual damages. Rather, the plaintiff is seeking statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), which states, "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Moreover, the plaintiff seeks additional damages under 47 U.S.C. § 553(c)(3)(B), which states, "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." But the statute also contains a "safety valve" that states, "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C. § 553(c)(3)(C).

As a preliminary matter, the court finds that the "safety valve" is not applicable. Mr. Govani had reason to believe that he was not authorized to display the fight to the bar patrons and knew or should have known that whatever he displayed on the television in the VIP room

4

could also be displayed on the remaining televisions in the bar. Yet Mr. Govani did not take reasonable steps to ensure that the fight was not also being shown downstairs. Even when he noticed employees watching the fight at the bar, he simply turned off that television; he did not take steps to ensure it could not be shown again.

In assessing statutory damages under 47 U.S.C. § 553 (or the largely similar statute dealing with pirated satellite broadcasts, 47 U.S.C. § 605), courts within the Seventh Circuit have taken a variety of approaches, with perhaps the most popular being an assessment of $55 per patron, an approach traceable to a 1996 decision out of the Northern District of Illinois, That's Entertainment v. Old Bridge Tavern, 1996 U.S. Dist. LEXIS 3872, 10 (N.D. Ill. Mar. 29, 1996), which in turn relied upon a 1994 case out of the Southern District of New York that applied a $50 per person assessment, Cablevision Sys. Corp v. 45 Midland Enter., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994), which itself relied upon a 1989 case awarding $30 per patron, Cablevision Systems Inc. v. Doudlesox, Inc., CV 89-0500 (DFJ) (E.D.N.Y. Aug. 24, 1989).

Subsequent decisions have continued to apply the $55 per patron rate, without adjusting for inflation as earlier decisions appeared to do. See, e.g., Joe Hand Promotions, Inc. v. L. A. Moon LLC, 2013 U.S. Dist. LEXIS 24161 (W.D. Wis. Feb. 20, 2013) (citing J & J Sports Productions, Inc. v. Aguilera, 2010 U.S. Dist. LEXIS 57717 (N.D. Ill. June 11, 2010); J&J Sports Prod., Inc. v. Ramirez, 2008 U.S. Dist. LEXIS 124243, 3 (N.D. Ill. Sept. 18, 2008); Joe Hand Promotions v. SCK Mgmt. Servs., 2013 U.S. Dist. LEXIS 106722 (W.D. Wis. Jan. 9, 2013); Joe Hand Promotions, Inc. v. Dewey's Roadhouse, LLC, 2012 U.S. Dist. LEXIS 188795 (W.D. Wis. Mar. 21, 2012); J & J Sports Prod. v. Montero, 2011 U.S. Dist. LEXIS 157550 (W.D. Wis. Mar. 16, 2011); J & J Sports Prod. v. Sunsets on Sand, LLP, 2010 U.S. Dist. LEXIS 67708 (W.D. Wis. July 7, 2010)); J & J Sports Prods. v. Broadway Baby of Wis., Inc., 2013 U.S.

5

Dist. LEXIS 8420 (E.D. Wis. Jan. 22, 2013) (citing Joe Hand Promotions, Inc. v. Ewer, 2009 U.S. Dist. LEXIS 100415 (E.D. Wis. Oct. 8, 2009); Joe Hand Promotions, Inc. v. Kaczmar, 2008 U.S. Dist. LEXIS 88199 (N.D. Ill. Oct. 29, 2008)); J & J Sports Prods. v. Gmr Entm't LLC, 2012 U.S. Dist. LEXIS 180995 (E.D. Wis. Dec. 20, 2012); G&G Closed Circuit Events, Inc. v. CCMC, Inc., 2012 U.S. Dist. LEXIS 91139 (E.D. Wis. July 2, 2012); G&G Closed Circuit Events, LLC v. Flynn, 2011 U.S. Dist. LEXIS 120587 (N.D. Ill. Oct. 19, 2011); G&G Closed Circuit Events, LLC v. DJT Fieldhouse, Inc., 2011 U.S. Dist. LEXIS 110761 (C.D. Ill. Sept. 28, 2011); J & J Sports Prods. v. Tu, 2008 U.S. Dist. LEXIS 88195 (N.D. Ill. Oct. 29, 2008).

It is unclear precisely what was the original basis for the $30, then $50, and then $55 per patron rates, but perhaps it had some relationship to the commercial rate card. Or, perhaps, it was based upon what it would have cost had each individual paid to view the fight as his or her home, an approach taken by at least one court in the Seventh Circuit, see Joe Hand Promotions, Inc. v. Abrell, 2012 U.S. Dist. LEXIS 88955 (S.D. Ind. June 27, 2012). The court has not received evidence as to the private rate for this fight and thus is unable to utilize this means for calculating statutory damages.

Adjusting the 1996 $55 per person rate for inflation, see http://www.bls.gov/data/inflation_calculator.htm, and considering that this violation occurred in mid-2011, would result in an award of roughly $80 per patron. The evidence established that there was a maximum of 20 patrons in the establishment at any one time, and thus an award under this method would be $1,600, which is less than the minimum charge of $2,200 set forth on the commercial rate card. When the per patron method yields a figure less than the minimum rate the defendant would have been charged had it purchased the event lawfully, courts will adjust the statutory damages

figure to the contract rate. See, e.g., J&J Sports Prods. v. El Canaveral LLC, 2014 U.S. Dist. LEXIS 18933 (E.D. Wis. Feb. 14, 2014).

The plaintiff contends that if the defendant had purchased the pay-per-view event lawfully, it would have been charged $8,200 because the venue had a capacity of 299 persons. However, the evidence is not necessarily clear that this is the rate the defendants would have been charged. First, there is a question as to what was the capacity of the establishment on the date of the fight. When asked the current capacity, Ms. Govani-Wilbur stated 299. Mr. Govani agreed that this was the current capacity but stated that he believed that on the date of the fight it was only 199, indicating that the capacity changed right around the time of the fight. In light of Mr. Govani's uncertainty, the court finds that the capacity on the date of the fight was 299.

More importantly, it is not clear whether an establishment's maximum capacity is even relevant to assessing the rate charged. The rate card, Exhibit 3, states the rates vary by "minimum seating." Room capacity and minimum seating are not the same thing. Further, how is "seating capacity" of an establishment calculated? For example, a large venue could remove all its seats, forcing its patrons to stand and watch the fight, and thus have an actual seating capacity of zero. Should it then receive the lowest rate simply because it forced its patrons to stand? If that's how rates are determined, it is unclear how any establishment could have a "minimum seating" of anything more than zero. Moreover, if "seating" as opposed to capacity is the relevant measure, how is a rate calculated for an establishment like the defendants' that contains a few chairs but much of the space is intended for standing (or dancing) patrons? Or should the rate be calculated based upon the number of patrons who actually viewed the fight at any one time?

Judge Tharp of the Northern District of Illinois has repeatedly assessed statutory damages by taking the maximum number of patrons observed in the establishment and then seeing where that number would fall on the rate card. J&J Sports Prods. v. Estrada, 2014 U.S. Dist. LEXIS 79301 (N.D. Ill. June 11, 2014) ("Based on a maximum of 21 patrons, the defendants would have had to pay $1200 to order the Program (minimum seating of 0 to 100 subject to a rate of $1,200)." (citation omitted)); J&J Sports Prods. v. Ortega, 2012 U.S. Dist. LEXIS 151822, 8-9 (N.D. Ill. Oct. 23, 2012) ("Based on a maximum of 50 patrons, the defendants would have had to pay $2,200 to order the Program (minimum seating of 0 to 100 subject to a rate of $2,200)." (citation omitted)); Innovative Sports Mgmt. v. Kolodzie, 2012 U.S. Dist. LEXIS 151831 (N.D. Ill. Oct. 23, 2012) ("Based on a maximum of 52 patrons, the defendants would have had to pay $1,000 to order the Program. (seating 50 to 100 subject to a rate of $1,000)." (citation omitted)). Under this approach, based upon a maximum of 20 patrons, the proper rate charged to the defendant would be $2,200.

At least one court, however, explicitly stated that it concluded it was incorrect to calculate the appropriate rate based upon the actual number of patrons but instead concluded that the maximum capacity of the establishment must be utilized. Joe Hand Promotions, Inc. v. Parlavecchio, 2011 U.S. Dist. LEXIS 110379, 4 n.1 (C.D. Ill. Sept. 27, 2011). But the decision in Parlavecchio does not indicate whether the rate card at issue in that case used the same language as the present rate card, setting rates based upon "minimum seating."

The court finds that the plaintiff has failed to establish that the defendant would have been charged $8,200 if it had purchased the fight legally. Rather, the court finds that the plaintiff has established only that the defendant would have been charged at least $2,200. Thus, the court finds that statutory damages must be at least $2,200.

Awarding statutory damages in the amount that an establishment would have paid had it lawfully purchased a pay-per-view event will generally be insufficient because it does nothing to deter the conduct in the future. In fact, it could arguably incentivize wrongful conduct because an establishment can assume that not every one of its violations will be detected and thus, over time, it will come out ahead. The interest in deterring unlawful conduct is often accounted for in the court's assessment of additional damages under 47 U.S.C. § 553(c)(3)(B). Thus, the court turns to the question of whether additional damages are appropriate and first asks whether "the violation was committed willfully and for purposes of commercial advantage or private financial gain."

The court finds the evidence insufficient to establish that Mr. Govani willfully violated the statute. Granted, he did willfully take the cable box from his home, bring it to the club, and connect it into the club's system of televisions. He did willfully watch the broadcast in a semi-private area of the club with his friends. But the court does not find that he willfully exhibited the fight to the other patrons in the club. When he saw that the fight was being exhibited on a television in the main part of the club, he turned it off. Notably, he did not advertise the exhibition of the fight, did not charge a premium for food, drinks, or cover charge (conversely, drink prices were two-for-one that night), and, in fact, the record indicates that the volume on the main floor televisions was off. Nevertheless, Mr. Govani should have recognized that there was a possibility that by connecting the cable box into the club's system of televisions, the fight could have been visible on other televisions, and thus he should have checked to ensure that the other televisions were off and remained off. But Mr. Govani's failures do not amount to willfulness, and thus additional damages under 47 U.S.C. § 553(c)(3)(B) are not appropriate.

The court next turns to an alternative form of additional damages based upon an interest in deterring not just willful, but also what are essentially negligent acts. Accordingly, in this case, the court will consider "non-willful conduct" deterrence when assessing statutory damages. The Court of Appeals for the First Circuit rejected this argument, see Charter Commc'ns Entm't I, DST v. Burdulis, 460 F.3d 168, 181 (1st Cir. 2006), concluding that statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii) are merely a substitute for actual damages and thus statutory damages should be an estimated amount of actual damages. Id. at 181-82. This court believes that the statutory command that the court award damages "as the court considers just," 47 U.S.C. § 553(c)(3)(A)(ii), is arguably broad enough to permit the court to consider deterrence in assessing statutory damages.

If the court could not consider deterrence in assessing statutory damages, then there would arguably be a gap into which a case such as this, where the conduct was negligent but not willful, would fall. The law frequently aims to deter not just willful or intentional acts but also acts done negligently. Courts within the Seventh Circuit have regularly considered deterrence in assessing statutory damages. See, e.g., J&J Sports Prods. v. Gonzales, 2013 U.S. Dist. LEXIS 126683 (S.D. Ind. Sept. 5, 2013); J & J Sports Prods. v. McCausland, 2012 U.S. Dist. LEXIS 4439 (S.D. Ind. Jan. 13, 2012); Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001).

The court concludes that, under the circumstances of this case, it is appropriate to take into account the policy of deterrence, both specific and general, when assessing statutory damages. Not doing so would fail to adequately foster the statutory purpose of deterring piracy whether it be willful or, in effect, negligent. Moreover, it is not always easy to prove willful conduct for the purposes of commercial advantage or private financial gain. As can be seen in

this case, it is not just acting willfully, but the motivating purpose of those actions must be for financial gain. Thus, simply requiring a plaintiff to pay what he would have been required to pay had he acted lawfully is often insufficient under the statute.

In assessing what additional amount will adequately deter this defendant and other would-be defendants, the court takes into consideration the specific facts of this case, the difficulty in detecting unlawful displays of pay-per-view events, and concludes that the sum of $2,000 is appropriate. The court finds this additional sum to be significant enough to deter the conduct but also proportional to the harm and not unduly punitive. Therefore, the court shall order the defendants to pay to the plaintiff the total sum of $4,200 as statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii).

Additionally, the plaintiff is entitled costs and reasonable attorney's fees. Joe Hand Promotions, Inc. v. Zani, 2014 U.S. Dist. LEXIS 31591 (N.D. Ill. Mar. 11, 2014). Counsel for the plaintiff has established that he expended 6 hours on this case. The court has reviewed his time records and finds the time expended to be extremely reasonable (the court cannot recall a case that went to trial that resulted in fewer attorney hours). Counsel seeks compensation at the rate of $250 per hour, a rate that the court likewise finds reasonable.

The defendant does not challenge the attorney's fees sought by the plaintiff other than to argue that the court should exercise its discretion to decline to award attorney's fees because "the right which the plaintiff seeks to vindicate is so de minimis as to make the award of costs and attorneys' fees unmerited." (Docket No. 20 at 10.) Courts have held that attorney's fees are mandatory under 47 U.S.C. § 605, Joe Hand Promotions, Inc. v. Zani, 2014 U.S. Dist. LEXIS 31591 (N.D. Ill. Mar. 11, 2014); Joe Hand Promotions, Inc. v. That Place, LLC, 2012 U.S. Dist. LEXIS 90536 (E.D. Wis. June 29, 2012); Burdulis, 460 F.3d at 171 n.2; Directv v. Crespin, 224

Fed. Appx. 741, 758 (10th Cir. 2007) (unpublished)), and the court has no reason to believe the conclusion should be different under 47 U.S.C. § 553 Thus, the court shall award the plaintiff the sum of $1,500 in attorney's fees.

**IT IS THEREFORE ORDERED** that the Clerk shall enter judgment in favor of the plaintiff and against the defendants for $4,200, together with attorney's fees in the amount of $1,500, plus costs.

Dated at Milwaukee, Wisconsin this 15th day of August, 2014.

*[signature]*
AARON E. GOODSTEIN
U.S. Magistrate Judge